1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ARIE W.,

                    Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

CASE NO. 3:20-cv-05360-BAT

**ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Plaintiff seeks review of the denial of his applications for Supplemental Security Income and Disability Insurance Benefits. He contends the ALJ erred by providing insufficient reasons to discount the opinions of three examining psychologists and one reviewing psychologist and by discounting plaintiff's testimony. Dkt. 21. The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 43 years old, has a high-school education, and has worked as a septic tank servicer, landscape laborer, and grease pumper. Tr. 50, 58, 59–64, 499. In December 2015, he applied for benefits, alleging disability as of March 1, 2010. Tr. 114–15. His applications were denied initially and on reconsideration. Tr. 116–66. The ALJ conducted a hearing in May 2018 and issued a March 2019 decision. Tr. 21–35, 43–113. The ALJ found that plaintiff met the

1  disability insured status requirements through March 31, 2012. Tr. 23. The ALJ found that

2  plaintiff had a number of severe impairments: several physical impairments as well as major

3  depressive disorder. Tr. 23. In assessing residual functional capacity ("RFC"), the ALJ

4  determined that plaintiff could perform sedentary work with additional physical and mental

5  restrictions. Tr. 27. The mental restrictions were that plaintiff is able to perform simple, routine

6  tasks; he is able to maintain superficial contact with coworkers but cannot engage in team tasks;

7  he cannot maintain public contact; he is able to tolerate occasional interaction with supervisors

8  after an initial training period. *Id.* As the Appeals Council denied plaintiff's request for review,

9  the ALJ's decision is the Commissioner's final decision. Tr. 1–3.

10      Plaintiff here does not challenge the RFC assessment with respect to physical limitations.

11  Plaintiff's alleged errors refer only to the ALJ's handling of three examining psychologists and

12  of a reviewing psychologist, and of plaintiff's testimony about mental limitations. Dkt. 21, at 1.

13  Moreover, plaintiff does not appear to challenge the ALJ's denial of his application for Disability

14  Insurance Benefits because all the evidence to which he refers post-dates the DIB date last

15  insured of March 31, 2012. *Compare* Dkt. 1 *with* Tr. 28 (noting that plaintiff's only record

16  evidence pre-dating the date last insured were the medical chart notes at Tr. 402–08).

17                                          **DISCUSSION**

18      The Court will reverse the ALJ's decision only if it was not supported by substantial

19  evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v.*

20  *Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account

21  of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one

22  rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v.*

23  *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 2

The Court affirms the ALJ's decision because the ALJ's evaluation of the psychologists' opinions and of plaintiff's testimony on mental limitations was supported by substantial evidence and was not the result of harmful legal error.

### 1. Opinions of Examining Psychologists

For disability applications like this one filed before March 27, 2017, more weight should be given to the opinions of examining doctors than to the opinions of doctors who do not examine or treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see* 20 C.F.R. § 404.1527(c)(2); SSR 96-2p (rescinded by Federal Register Notice Vol. 82, No. 57, page 15263 effective March 27, 2017). That did not happen here. On the question of mental limitations, the ALJ discounted the examining opinions of Kimberly Wheeler, Ph.D., Alyson Ruddell, Ph.D., and Bruce Duthie, Ph.D., and gave substantial weight to the opinions of non-examining state agency consultants Gary L. Nelson, Ph.D., and John F. Robinson, Ph.D. Tr. 30–32. The Court therefore must examine whether the opinions of Drs. Wheeler, Ruddell, and Duthie were discounted for specific and legitimate reasons that are supported by substantial evidence. *Lester*, 81 F.3d at 830. "The opinion of a nonexamining physician cannot *by itself* constitute substantial evidence that justifies the rejection of the opinion of . . . an examining physician . . . ." *Id.* (emphasis added).

Relevant here is that the ALJ did not reject the examining opinions of Drs. Wheeler, Ruddell, and Duthie outright. Rather, the ALJ found that certain mental limitations deemed to be marked were better characterized as moderate, and adjusted the RFC accordingly with reference to substantial record evidence.

### a.  Dr. Wheeler

In September 2015, examining psychologist Dr. Wheeler opined that plaintiff had several moderate limitations and also marked limitations in performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; adapting to changes in a routine work setting; and completing a normal workday and work week without interruptions from psychological symptoms. Tr. 500–01. In September 2016, Dr. Wheeler generally confirmed her 2015 opinion but found that plaintiff had only moderate limitations in completing a normal workday and work week without interruptions from psychological symptoms and had marked limitations in communicating and performing effectively in a work setting. Tr. 1067. In both opinions, Dr. Wheeler rated the overall severity of plaintiff's mental impairments to be marked. Tr. 501, 1067.

The ALJ did not evaluate Dr. Wheeler's September 2015 evaluation in great detail. The ALJ noted only that Dr. Wheeler's September 2016 evaluation was largely the same as in 2015, plaintiff had presented as less vitriolic in 2016 than he had in 2015, and the 2015 evaluation occurred prior to the application date. Tr. 31. The ALJ gave little weight to Dr. Wheeler's September 2016 opinion because (1) it was not supported by the source's own mental status examinations; and (2) it was not consistent with the reviewing opinions of Drs. Nelson and Robinson, which encompassed more medical records and were supported by the medical record and mental status examinations of Drs. Wheeler and Duthie. *Id.* Those reasons for discounting Dr. Wheeler's 2016 opinion were specific and legitimate, and any error stemming from the ALJ's failure to evaluate Dr. Wheeler's 2015 opinion in greater detail was harmless.

First, the incongruity between Dr. Wheeler's conclusion about plaintiff's marked mental limitations and the concurrent mental examination findings is a specific and legitimate reason to

discount the 2016 opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In the mental status examination, Dr. Wheeler observed that plaintiff was dressed in casual clothing with good hygiene, had speech within normal limits, had attitude and behavior within normal limits, had a softly anxious mood that was less vitriolic than it had been in 2015, and had an affect within normal limits. Tr. 1068. Dr. Wheeler also observed that plaintiff was within normal limits in every measurable category: thought process and content, orientation, perception, memory, fund of knowledge, concentration, abstract thought, and insight and judgment. Tr. 1069. That Dr. Wheeler had observed plaintiff to be within normal limits in every domain could reasonably be construed as undermining Dr. Wheeler's conclusion that plaintiff suffered from marked mental limitations rather than from the moderate mental limitations assessed in the RFC. This is particularly reasonable in light of plaintiff's daily activities recorded by Dr. Wheeler:

> Wakes at 6:30a. Coffee. Get kids ready for school, take them to bus stop (an hour apart). Appointments. Paperwork. . . . Watch TV. Reads some. Has a few friends he keeps touch with. Maybe play games on the phone. Has been eating chicken, apples, some veggies – following a diet and has lost 40 lbs[.] so far. Drinks at least a gallon of water. Once kids home, homework, prep dinner.

Tr. 1066.

Second, the ALJ's reliance on the opinions of reviewing psychologists Drs. Nelson and Robinson was a specific and legitimate reason to discount Dr. Wheeler's September 2016 opinion because the reviewing opinions were supported by the medical record, including the mental status examinations by Dr. Wheeler and Dr. Duthie. Dr. Nelson reviewed records addressing mental-health limitations from February 2012 to May 2016. Tr. 121. Although Dr. Nelson gave significant weight to Dr. Duthie's examining opinion, he opined moderate instead of marked limitations in interacting appropriately with the public, supervisors, and coworkers because plaintiff did not demonstrate more severe restrictions while being seen at multiple

1   doctor's appointments. Tr. 121, 124, 127–28. On reconsideration, Dr. Robinson reviewed the

2   record of mental limitations through July 2016, as well as the consistency of plaintiff's

3   statements with third-party statements about activities of daily living. Tr. 145–46. As Dr. Nelson

4   did, Dr. Robinson gave significant weight to Dr. Duthie's examining opinion but opined

5   moderate rather than marked limitations in social interaction. Tr. 149, 153. Dr. Robinson noted

6   that plaintiff's roommate reported that plaintiff's daily activities included taking kids to the bus

7   stop, letting the pets outside, preparing simple means daily, doing laundry, vacuuming, driving,

8   shopping, and managing money. Tr. 147. There is no indication that Drs. Nelson and Robinson

9   made unreasonable inferences based on their review of the medical records. In fact, as noted by

10  the ALJ, Tr. 31, the conclusions of moderate mental limitations by Drs. Nelson and Robinson

11  appeared consistent with the largely normal mental status examinations performed by Dr.

12  Wheeler and Dr. Duthie. *See* Tr. Tr. 933–34, 1068–69.

13        Plaintiff argues that the ALJ should have, but did not, examine Dr. Wheeler's September

14  2015 opinion because, though it predated the application date by three months, an ALJ is

15  required to develop the medical record for the 12 months preceding the application date. Dkt. 21,

16  at 8; *see* 20 C.F.R. § 416.1912. The Court finds that the ALJ reviewed Dr. Wheeler's 2015

17  opinion, as evidenced by the ALJ noting that plaintiff was more vitriolic when seen by Dr.

18  Wheeler in 2015, that the 2015 opinion was consistent with the 2016 opinion, and that the

19  September 2015 opinion had indeed occurred prior to the application date of December 2015.

20  *See* Tr. 31. To the extent the ALJ erred by not evaluating Dr. Wheeler's 2015 opinion in greater

21  detail, this error was harmless. The ALJ noted accurately that Dr. Wheeler's September 2015

22  opinion was consistent with her September 2016 opinion. Tr. 31. Thus, the specific and

23

legitimate reasons for discounting Dr. Wheeler's September 2016 opinion applied with equal force to Dr. Wheeler's September 2015 opinion.

The Court finds that the ALJ cited specific and legitimate reasons for discounting Dr. Wheeler's opinions and accounting only for moderate mental limitations in the assessed RFC.

### b.  Dr. Ruddell

In August 2017, examining psychologist Dr. Ruddell reviewed Dr. Wheeler's 2016 opinion and opined that plaintiff had several moderate mental limitations as well as marked limitations in learning new tasks, adapting to changes in a routine work setting, and setting realistic goals and planning independently. Tr. 1073, 1075. Nevertheless, Dr. Ruddell assessed the overall severity of plaintiff's symptoms with a Global Assessment of Functioning ("GAF") score of 51–60: moderate symptoms or moderate difficulty in social, occupational, or school functioning. Tr. 1075; *see* American Psychiatric Ass'n, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV-TR) 34 (2000). Dr. Ruddell also opined that vocational training or services would minimize or eliminate barriers to employment and recommended a referral to vocational rehabilitation. Tr. 1075.

The ALJ gave Dr. Ruddell's examining opinion little weight because (1) it was not supported by her own mental status examination; and (2) it was not consistent with the reviewing opinions of Drs. Nelson and Robinson, which encompassed more of the medical record and were supported by the medical record and the mental examinations of Drs. Wheeler, Duthie, and Ruddell. Those reasons for discounting Dr. Ruddell's opinion were specific and legitimate.

First, the ALJ reasonably determined that Dr. Ruddell's examining opinion was inconsistent with her own mental status examination. Dr. Ruddell observed that plaintiff was within normal limits in most domains but opined that plaintiff's mood was depressed, content of

thought was paranoid, memory was recent and immediate impaired and concentration on serial 3's was impaired. Tr. 1076. Nonetheless, Dr. Ruddell herself referred to a GAF score indicating overall moderate limitations, suggested that vocational training would minimize or eliminate barriers to employment, and recommended vocational rehabilitation services. Tr. 1075.

Second, the ALJ reasonably discounted Dr. Ruddell's opinion because it conflicted with the reviewing opinions of Drs. Nelson and Robinson, other longitudinal medical evidence, and the mental status examinations of Drs. Wheeler, Duthie, and Ruddell. Tr. 31. Moreover, as the ALJ also noted, Dr. Ruddell opined marked limitations in certain domains—learning new tasks and setting realistic goals and planning independently—that in 2016 Dr. Wheeler found to be either mild or moderate limitations. *See* Tr. 31; *compare* Tr. 1067 *with* Tr. 1075. And Dr. Wheeler opined marked limitations in certain domains—performing activities within a schedule, maintaining regular attendance, and being punctual; and communicating and performing effectively in a work setting—that Dr. Ruddell found to be either mild or moderate limitations. *Compare* Tr. 1067 *with* Tr. 1075.

The Court finds that the ALJ cited specific and legitimate reasons for discounting Dr. Ruddell's opinion and accounting only for moderate mental limitations in the assessed RFC.

### c.  Dr. Duthie

In May 2016, examining psychologist Dr. Duthie opined that plaintiff would have marked difficulty interacting appropriately with the public, supervisors, and coworkers and would have difficulty working because his work effort might be interrupted by angry outbursts and panic disorder. Tr. 935. Otherwise Dr. Duthie opined no mental limitations that conflicted with the ALJ's RFC assessment.

1    The ALJ discounted Dr. Duthie's conclusions because they were based primarily on

2    plaintiff's allegations rather than on the mental status examination, Dr. Duthie had no way of

3    knowing what specific simple, routine tasks plaintiff could or could not complete, Dr. Duthie

4    could not know what work-related tasks, environment, or interactions would trigger the reported

5    panic symptoms, and the opinion was inconsistent with the mental examination findings of the

6    examining psychologists. Tr. 30. The ALJ thus cited at least two specific and legitimate reasons

7    for discounting Dr. Duthie's opinion: (1) the assessed mental limitations were not adequately

8    supported by plaintiff's subjective complaints and Dr. Duthie's clinical findings; and (2) the

9    severity of the assessed mental limitations was not supported by Dr. Duthie's own mental status

10   examination and by the mental status examinations of Drs. Wheeler and Ruddell.

11   First, the ALJ could reasonably infer that Dr. Duthie's conclusions were supported only

12   to the extent of the moderate mental limitations assessed in the RFC, i.e., plaintiff could perform

13   simple, routine tasks; could maintain superficial contact with coworkers but could not engage in

14   team tasks; he could not maintain public contact; he could tolerate occasional interaction with

15   supervisors after an initial training period. *See* Tr. 27. Although Dr. Duthie opined that plaintiff's

16   ability to work might "be interrupted by angry outbursts and panic disorder," Tr. 935, this

17   assessed functional limitation appears to be based entirely on plaintiff's statements about feeling

18   angry and panicked without reference to the medical record, clinical findings, or work history:

19
20
- He reports he is quite irritable and recently got into two fights, in which he physically contacted other people. In describing this, he said he "just flipped."

21
22
23
- He reports having a panic disorder, which seems to happen when he is around groups of people. He feels like he is constantly looked at and picked on by others. During panic attacks, he has a racing heart, he sweats, and he has shortness of breath. He also indicates he feels lightheaded and has tightness in his chest. He reports he feels anger

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 9

1

2

          coming up, sometimes gets a headache, and feels poorly
          about himself during these panic attacks.

3
- He is angry and sometimes gets into conflicts with others
  but has no identified individual he wants to harm.

4
Tr. 933–34. Dr. Duthie's conclusion that plaintiff would have marked difficulty interacting

5
appropriately with the public, supervisors, and coworkers, Tr. 935, appears to have been

6
adequately addressed in the RFC by eliminating public contact, allowing only superficial contact

7
with coworkers and no teamwork, and permitting only occasional contact with supervisors, Tr.

8
27. To the extent Dr. Duthie's limitation on social interaction exceeded the RFC, the ALJ could

9
reasonably discount such limitations as unsupported by clinical findings, which noted only: "He

10
used to have hobbies but does not have funds to do them now. He does socialize with neighbors.

11
He indicates he can go camping in the 'easy campgrounds.'" Tr. 934. "The ALJ need not accept

12
the opinion of any physician, including a treating physician, if that opinion is brief, conclusory,

13
and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th

14
Cir. 2002).

15
        Second, the ALJ could reasonably infer that Dr. Duthie's assessed mental limitations

16
were contradicted by his own mental status examination and the mental status examinations of

17
Drs. Wheeler and Ruddell. Nothing in Dr. Duthie's mental status examination, or in the other

18
examining mental status examinations, suggests that plaintiff's mental limitations, whether

19
related to social contact, panic, or anger, went beyond the mental restrictions assessed in the

20
RFC. *Compare* Tr. 27 *with* Tr. 933–34 *and* Tr. 1069 *and* Tr. 1076.

21
        The Court finds that the ALJ cited specific and legitimate reasons for discounting Dr.

22
Duthie's opinion and accounting only for moderate mental limitations in the assessed RFC.

23

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 10

### 2.  Opinion of Reviewing Psychologist Holly Petaja, Ph.D.

The ALJ gave little weight to Dr. Petaja's February 2018 non-examining opinion because Dr. Petaja reviewed only the report from Dr. Wheeler, her findings mirrored those of Dr. Wheeler, and Dr. Petaja's opinion could be discounted in the same manner due to inconsistency with the opinions of Drs. Nelson and Robinson. Tr. 31. An ALJ may discount the non-examining opinion of Dr. Petaja by referring to specific evidence in the medical record, *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

Plaintiff is correct that the ALJ erred by determining that Dr. Petaja had reviewed only the report from Dr. Wheeler. In fact, Dr. Petaja had reviewed only Dr. Ruddell's August 2017 examining opinion. Tr. 1070. This error was, however, harmless because the ALJ cited specific and legitimate reasons for discounting Dr. Ruddell's opinion and those reasons apply with equal force to Dr. Petaja's non-examining opinion.

The Court finds that the ALJ harmlessly erred by discounting Dr. Petaja's reviewing opinion as being based on Dr. Wheeler's opinion rather than on Dr. Ruddell's opinion.

### 3.  Plaintiff's Testimony About Mental Limitations

Plaintiff contends that the ALJ failed to cite clear and convincing reasons for discounting his mental symptom testimony. *See Tommasetti*, 533 F.3d at 1039. The Court finds that the ALJ accounted for plaintiff's alleged mental symptom testimony in the RFC by restricting him to simple, routine tasks; superficial contact with coworkers and no team tasks; no public contact; and occasional interaction with supervisors. *See* Tr. 27. To the extent plaintiff alleged greater mental restrictions than those incorporated in the assessed RFC, the ALJ cited clear and convincing reasons for discounting plaintiff's testimony: conflict with the opinions of Drs.

Nelson and Robinson, the longitudinal medical record, and the mental status examinations of Drs. Wheeler, Ruddell, and Duthie.

The Court finds that the ALJ adequately accounted for plaintiff's testimony in assessing RFC and, to the extent plaintiff's testimony was discounted, cited clear and convincing reasons for doing so.

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 28th day of January, 2021.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 12